747 F.Supp. 88 (1990)
MAINE ASSOCIATION OF INTERDEPENDENT NEIGHBORHOODS and Shirley Thompson, Plaintiffs,
v.
COMMISSIONER, MAINE DEPARTMENT OF HUMAN SERVICES, Defendant and Third-Party Plaintiff,
v.
Clayton YEUTTER, Secretary, United States Department of Agriculture, Third-Party Defendant.
Civ. No. 88-0240 B.
United States District Court, D. Maine.
September 27, 1990.
Jack Comart, Pine Tree Legal Assistance, Inc., Augusta, Me., for plaintiffs.
Marina E. Thibeau, Asst. Atty. Gen., Dept. of Human Services, Augusta, Me., for defendant and third-party plaintiff.
*89 Michael M. DuBose, Asst. U.S. Atty., Bangor, Me., for third party defendant.

MEMORANDUM OF DECISION AND ORDER
GENE CARTER, Chief Judge.
This case is back before the Court on Third-Party Defendant Yeutter's motion to dismiss or, in the alternative, for entry of final judgment. Secretary Yeutter, citing Lujan v. National Wildlife Federation, ___ U.S. ___, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990), argues that the complaint must be dismissed because Plaintiffs lack standing. Alternatively, if the Court determines that Plaintiffs have standing, Secretary Yeutter seeks entry of final judgment.
The Court, for the reasons discussed below, will defer ruling on the motions to dismiss and for final judgment pending further supplementation of the record.

BACKGROUND
On September 26, 1988, Plaintiff Maine Association of Interdependent Neighborhoods (M.A.I.N.) filed a complaint for declaratory and injunctive relief in Maine Superior Court in and for the County of Kennebec. In the complaint, M.A.I.N. challenged the "voluntary quit" and "income deduction" regulations that the Commissioner promulgated in accordance with federal regulations concerning the federally-funded Food Stamp program. See 7 C.F.R. § 273.1(d)(2); 7 C.F.R. § 273.9(b)(2)(i). The Commissioner removed the action to this Court on October 17, 1988, simultaneously filing a third-party complaint against the Secretary. By the third-party complaint, the Commissioner sought to bind the United States Department of Agriculture to any decision of this Court concerning administration of the Food Stamp program.
On October 18, 1988 M.A.I.N. filed an amended complaint in which Shirley Thompson, a food stamp recipient who alleged that she was injured through application of the income deduction rule, joined as a plaintiff. On January 3, 1989 the Commissioner moved to dismiss the action on the ground that Plaintiffs lacked standing. This Court held that Plaintiff Thompson lacked standing to challenge the voluntary quit rule because she made no allegation that it threatened or actually caused her injury. M.A.I.N. v. Commissioner, Civil No. 88-0240-B, slip op. at 8 (Aug. 22, 1989) (per Cyr, J.). The Court determined, however, that Thompson alleged sufficient facts to withstand a motion to dismiss for lack of standing with respect to the income deduction rule. Id. at 8. Because Thompson had standing to challenge the income deduction rule, and because she is a member of M.A.I.N., the Court held that Plaintiff M.A.I.N. had standing to challenge the income deduction rule on Thompson's behalf. Id. at 9.
The Court then examined whether M.A. I.N. had standing to challenge the voluntary quit rule. In discussing the doctrine of "representational" or "associational" standing, pursuant to which an association may claim standing to sue on behalf of its members, the Court reiterated the three-part test enunciated by the Supreme Court in Hunt v. Washington State Apple Advertising Commission, 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977):
[a]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.
See M.A.I.N. v. Commissioner, slip op. at 9, quoting Hunt, 432 U.S. at 343, 97 S.Ct. at 2441. After applying the Hunt test, the Court concluded that:
[t]he complaint ambiguously alleges that "some [MAIN] members are adversely affected by the rules challenged." Complaint, at para. 3. (emphasis added). From this conclusory statement the court cannot reliably determine whether MAIN is alleging that any of its members are affected by [the voluntary quit rule] separate and apart from any effect that [the income deduction rule] may have on Thompson or any other member.
*90 Slip op. at 14. Because the Court could not determine from the allegations in the complaint whether the voluntary quit rule affected or threatened to affect any member of M.A.I.N., it ruled that it was unable to ascertain whether M.A.I.N. had associational standing. The Court denied the Commissioner's motion to dismiss and allowed M.A.I.N. an opportunity to amend the complaint (or to supplement the record) in order to demonstrate that a member or members would be affected adversely by the enforcement of the voluntary quit rule.[1] Slip op. at 15. The Court invited any party to file a supplemental memorandum of law addressing the standing issue once Plaintiffs had supplemented the record.
Plaintiffs filed a second amended complaint on September 28, 1989. That complaint alleged that "M.A.I.N. has members who are the head of a Food Stamp household but are not the primary wage earners. ..." Second Amended Complaint, ¶ 3.[2] Neither the Commissioner nor the Secretary again challenged Plaintiffs' standing to maintain the action, nor did any party file a supplemental memorandum, and the suit continued.
The Secretary filed a motion for summary judgment on the merits on October 6, 1989. The Commissioner did likewise on October 20, 1989, adopting and incorporating the Secretary's memorandum of law in support of the motion for summary judgment. Neither the pleadings nor the memoranda filed in support of the motion raised the issue of Plaintiffs' standing. Plaintiffs filed a cross-motion for summary judgment on December 26, 1989.
The Court resolved these motions partly in favor of Plaintiffs and partly in favor of the Commissioner and the Secretary. See M.A.I.N. v. Commissioner, 732 F.Supp. 248 (D.Me.1990) (per Carter, C.J.). The Court held that the voluntary quit rule, found at 7 C.F.R. § 273.1(d)(2), was invalid because it conflicted with the clear congressional intent expressed in 7 U.S.C. § 2015 of the Food Stamp Act. The Court also concluded that the income deduction rule, as stated at 7 C.F.R. § 273.9(b)(2)(i), was a permissible interpretation of 7 U.S.C. § 2014(e) of the Food Stamp Act.
The Court entered a declaratory judgment in accordance with the memorandum decision on March 2, 1990, declaring the voluntary quit rule invalid and the income deduction rule a permissible interpretation of the Food Stamp Act. The Secretary's appeal to the Court of Appeals for the First Circuit was dismissed as interlocutory because Plaintiffs' claims for injunctive relief were not resolved by this Court.

I.
The Secretary now moves to dismiss the complaint for lack of standing. The Secretary contends that M.A.I.N.'s allegations of harm are too vague and are thus insufficient under Lujan v. National Wildlife Federation, ___ U.S. ___, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990), to establish its standing to challenge the voluntary quit rule.[3]
*91 Plaintiffs respond by submitting the affidavit of Judy Guay, president of M.A.I.N. In the affidavit, Guay states: "Based upon my knowledge, information and belief M.A. I.N. has at least one member who is a food stamp `head of a household', is not the primary wage earner and who recently lost food stamps for the household when the primary wage earner quit work without good cause." Plaintiffs also contend that the allegations in the second amended complaint are sufficient to establish M.A.I.N.'s associational standing or, in the alternative, standing in its organizational capacity.
The Secretary's motion to dismiss for lack of standing is an issue of subject matter jurisdiction, see Bender v. Williamsport Area School District, 475 U.S. 534, 541-543, 106 S.Ct. 1326, 1331-32, 89 L.Ed.2d 501 (1986), and thus it is properly made pursuant to Fed.R.Civ.P. 12(b)(1). Haase v. Sessions, 835 F.2d 902 at 906 (D.C.Cir.1987). Because standing concerns the Court's subject matter jurisdiction, an objection based on lack of standing may not be waived.[4]
In the Court's view, resolution of the Secretary's motion to dismiss for lack of standing is governed (in part) by this Court's decision on the first challenge to Plaintiffs' standing. See M.A.I.N. v. Commissioner, Civil No. 88-0240-B, slip op. (Aug. 22, 1989) (per Cyr, J.). That decision is the law of the case.[5] The Court has concluded that it is not clearly erroneous, and it has not been reversed in the interim. The Court, therefore, in the interests of consistency and fairness to the parties, must accept that decision's teachings.
The Court's memorandum decision on Defendant's first standing challenge held that it was permissible to "examine affidavits particularizing the factual allegations of the complaint without transforming the [Rule 12(b)(1)] motion into one for summary judgment." Slip op. at 4, citing Haase v. Sessions, 835 F.2d 902, 905-908 (D.C.Cir. 1989); Wilderness Society v. Griles, 824 F.2d 4, 16 n. 10 (D.C.Cir.1987); Warth v. Seldin, 422 U.S. 490, 498, 95 S.Ct. 2197, 2204-05, 45 L.Ed.2d 343 (1975). The Court allowed Plaintiffs an opportunity to supplement the record to make apparent M.A.I. N.'s associational standing to challenge the voluntary quit rule.
In Warth v. Seldin the Supreme Court stated that
it is within the trial court's power to allow or require the plaintiff to supply, by amendment to the complaint or affidavits, further particularized allegations of fact deemed supportive of plaintiff's standing. If, after this opportunity, the plaintiff's standing does not adequately appear from all materials of record, the complaint must be dismissed.

422 U.S. at 501-02, 95 S.Ct. at 2206-07 (emphasis added).
The Court must first determine if the amendment to the complaint makes Plaintiff's standing "adequately appear from all the materials of record." To make this determination, the Court must ascertain the specificity required of the "further particularized allegations of fact deemed supportive of plaintiff's standing." If the standard is equivalent to a motion for summary judgment, then under Lujan the allegations fall short of the mark.
The Court agrees with Plaintiffs that Lujan's rather strict view of the facts necessary to establish a party's standing does not fully apply to a motion under Rule 12(b)(1). Lujan involved a motion for summary *92 judgment, and the court was careful to distinguish between a Rule 56 motion for summary judgment and a Rule 12(b) motion to dismiss on the pleadings. See Lujan, ___ U.S. at ___, 110 S.Ct. at 3189, 111 L.Ed.2d at 717. However, when a court undertakes to examine affidavits filed with a Rule 12(b)(1) motion, and directs the party opposing the motion to submit further affidavits supporting its standing, the Court functions as a fact-finder:
Article III courts have one additional and essential protection against unmeritorious standing claims. The option remains with the defendant and, in any event, with the court to test the asserted theory of injury, causation, and redressability at the factual, evidentiary level. The defendant can force this inquiry by filing a motion for summary judgment for want of standing. Alternatively, the court can initiate this factual inquiry at the motion to dismiss stage. In this latter case, the court will then explicitly base its standing decision on its assessments of the facts. The fact-finding of the court to support or deny standing is subject to review under the clearly erroneous standard.
Haase v. Sessions, 835 F.2d at 907 (citations omitted). The Court's role in this situation is not equivalent to its role in deciding a motion for summary judgment. Nevertheless, the Court concludes that a plaintiff's replacement of "conclusory allegations of the complaint ... with conclusory allegations of an affidavit," Lujan, ___ U.S. at ___, 110 S.Ct. at 3188, 111 L.Ed.2d at 716, or with conclusory allegations in an amended complaint, will not suffice to establish its standing once the Court undertakes a factual inquiry to satisfy itself of Plaintiff's standing.
Applying this standard to M.A.I.N., the Court finds that M.A.I.N. has failed to establish its claim of associational standing. The second amended complaint alleges that "M.A.I.N. has members who are the head of a Food Stamp household but are not the primary wage earners...." Second Amended Complaint, ¶ 3. The Court finds this allegation insufficient to support a finding that M.A.I.N. has representational standing. It does not identify the member allegedly affected by the voluntary quit rule, nor does it identify any of the factual circumstances supporting her claim to be subject to the regulation. Further, the affidavit filed by Judy Guay merely repeats the conclusory and insufficient allegation contained in the second amended complaint, and hence does not aid the Court's inquiry into M.A.I.N.'s standing. From the materials now on record, the Court is unable to adequately determine M.A.I.N.'s associational standing.

II.
For a number of reasons, the Court is reluctant to dismiss M.A.I.N.'s claim of associational standing at this stage of the litigation. Following this Court's first ruling on the standing question, M.A.I.N. may not have been aware of the degree of specificity required to support its claim of standing once the Court requested supplementation of the record. Footnote 5 of that decision suggested an allegation that would be sufficient to survive a Rule 12(b)(1) motion to dismiss absent a factual inquiry; apparently, Plaintiffs viewed that suggestion as an example of a "particularized allegation of fact" sufficient to establish M.A.I.N.'s claim of standing. Further, the Court has expended scarce judicial resources in deciding the parties' cross-motions for summary judgment and in entering a declaratory judgment. The Court sees some merit in the Secretary's argument that M.A.I.N. has had ample opportunity to supply sufficient factual allegations to support its claim of associational standing; at the same time, the Court notes that neither the Secretary nor the Commissioner raised the issue of standing until after the Court had decided the merits of the case. Under all the circumstances, the Court will exercise its discretion and will direct Plaintiff M.A.I.N. to submit appropriate affidavits, consistent with this opinion, in support of its claim of associational standing.
Accordingly, the Court defers ruling on the Secretary's motions to dismiss and for entry of final judgment. The Court directs Plaintiff M.A.I.N. to supply by affidavit(s), *93 within twenty (20) days of the date of this order, particularized allegations of fact from which the Court may assess M.A.I. N.'s claim of associational standing.
SO ORDERED.
NOTES
[1] The Court declined to address M.A.I.N.'s standing to challenge the voluntary quit rule in its own right, because "[t]he issues raised by [that determination] are complex and may be time-consuming. Yet those issues may not require resolution if it is properly made to appear, by the simple expedient of an amendment to the complaint (or other supplementation of the record), that some member or members of MAIN would be affected adversely by the enforcement" of the voluntary quit rule. Slip op. at 15.
[2] In a footnote to the memorandum decision on the Commissioner's Motion to Dismiss, the Court stated, with respect to the ambiguity in the amended complaint:

For example, MAIN does not allege that any of its members belong to a household in which the principal wage earner is not the head of the household, or that any such principal wage earner has in the past (or plans to) quit without just cause.
Slip Op. at 14 n. 5. Apparently, Plaintiffs took this "suggestion" and incorporated it into their second amended complaint.
[3] Because this Court has already determined that Plaintiff Thompson (and Plaintiff M.A.I.N. suing on her behalf) has standing to challenge the income deduction rule, the Court need inquire only into M.A.I.N.'s standing to challenge the voluntary quit rule.
[4] See, e.g., Fed.R.Civ.P. 12(h)(3): "Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." (Emphasis added.)
[5] The Court of Appeals for the First Circuit explained the law of the case doctrine as follows:

The law of the case doctrine makes binding upon a court a ruling made by a court at the same or higher level during prior stages of the same litigation, unless, of course, the ruling has been reversed in the interim.
...
Where the obedience of a lower court of the decision of a superior court is not at issue, the law of the case prohibition against reconsideration of issues settled by the same court is less than absolute. The prohibition is not so rigid nor the policy so strong that it mandates the perpetuation of clearly erroneous rulings.
Lacy v. Gardino, 791 F.2d 980, 984-85 (1st Cir. 1986) (citations omitted).